PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* UNIÓN DE TRABAJADORES DE LA AUTORIDAD METROPOLITANA. DE AUTOBUSES, Defendant.

No. JRT-65-3.        Decided May 13, 1965.

*J. B. Fernández Badillo, Solicitor General, Luis M. Rivera Pérez,* and *Celia Canales de González* for petitioner. *Nicolás Nogueras, Jr.,* for defendant. *José Raúl Cancio* for MBA, amicus curiae.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On May 10, 1965, the Puerto Rico Labor Relations Board requested this Court, pursuant to the provisions of § 9 (2) (a) of the Labor Relations Act, 29 L.P.R.A. § 70 (2) (a), to enforce an order of said agency directed to the Unión de Trabajadores de la Autoridad Metropolitana de Autobuses (UTAMA) which in its principal part urges the union to cease and desist from violating in any manner whatsoever the terms of the collective bargaining agreement which it signed or may sign with the Metropolitan Bus Authority. Within said proceeding—still pending to be heard—on

May 11 it requested us to issue a temporary order[1] directed to UTAMA, its agents, officers, directors, and members, "requiring them, under pain of contempt, to refrain from calling a strike, work stoppages, permanent assemblies, pickets, or any other form of interrupting the transportation services" rendered by the enterprise within the metropolitan area.[2] We held a hearing on May 12 to listen to the parties. The case was submitted this morning at 10:34, with a memorandum filed by the Board for which it requested, and we granted, a term. The Board says:

". . . the Labor Relations Board knew that this contention was a difficult matter for this Honorable Court. . . . But, the Board could not do otherwise. but. resort to you. . . . It was defenseless before a completely unfair, unprotected, unexpected strike and without notice. The order of the Board was violated with impunity . . . without relief. . . . In the meantime, Honorable Court, 202 thousand persons, workers, clerks, students . . . teachers, were unable to go to their obligations. . . . What could be done? The order of the Board to cease and desist

---

[1] Section 9(2)(a) reads in part: "The Board . . . may also ask the said Court [Supreme Court] to make any other appropriate temporary relief or restraining orders. . . ."

[2] To justify the petition for a temporary order the Board alleged that the UTAMA has disregarded the order to cease and desist—§ 9(2)(d) provides that the commencement of proceedings under subsection 2(a) shall not, unless specifically so ordered by the court, operate as a stay of the Board's order—and that after notice given by the President and the Secretary-Treasurer of the Union, the members held an extraordinary meeting on May 10, where it was agreed to call a strike which has paralyzed the Authority's transportation system. Several affidavits were also enclosed as well as a leaflet distributed under the signature of the above-mentioned officers of the union addressed to the users and the public, which, in general terms constitutes an exposition of the position of the labor organization in relation to certain differences as to the interpretation of the collective bargaining agreement with regard to the management's power to suspend and discharge the members of the Union or to impose on them what is known as "intermediate punishments."

It should be stated that this controversy was submitted to the arbitration proceeding provided by the agreement itself and that an award was rendered favorable to the Authority, which award we were requested to enforce on May 11.

was scorned and ridiculed. . . . So we resorted to you . . . in order that you could tell us whether anything could be done. . . . If you enter an order, or enforce the order of the Board to cease and desist, to put a stop to this abuse against the users of the buses, then a service will have been rendered to the People of Puerto Rico. . . . This is your jurisdiction . . . Puerto Rico. An order rendered by you in this urgent necessity, at this chaotic moment . . . affecting the traffic of the metropolitan zone, would put an end to the strike. Meanwhile, the case could be heard on the merits and the Honorable Court could then decide who is right. No one, Honorable Judges, would be prejudiced by this supreme remedy. . . . No one would lose anything . . . and the People of Puerto Rico would gain. . . ."

Even assuming that the UTAMA's action in initiating the strike constitutes a violation of the collective agreement,[3] we are barred from granting the request because we lack jurisdiction to do so. Any action on our part in the sense proposed is prohibited by § 2 of the Injunctions in Labor Disputes Act, No. 50 of August 4, 1947, 29 L.P.R.A, § 102, which in its pertinent part reads:

"No court of Puerto Rico shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of a labor dispute, to prohibit any person or persons participating or interested in such dis-

---

[3] Although the collective agreement does not contain an explicit no-strike clause, it provides in its Art. XXII for an elaborate arbitration mechanism to settle the controversies which might arise between the parties, and among them, those concerning the interpretation or violation of one or more clauses of the agreement. In *Teamsters Local* v. *Lucas Flour Co.*, 369 U.S. 95, 105 (1962), the Federal Supreme Court decided that "a strike to settle a dispute which a collective bargaining agreement provides shall be settled exclusively and finally by compulsory arbitration constitutes a violation of the agreement," and therefore it is a question of an illegal strike.

As to the scope of a no-strike clause, see *Labor Relations Board* v. *Unión Local 847*, 91 P.R.R. 750 (1965); Stewart, *Conversion of Strikes: Economic to Unfair Labor Practice*, 45 Va. L. Rev. 1322 (1959), and *Employer Remedies For Breach of No-Strike Clauses*, 39 Ind. L.J. 387 (1964).

pute from doing, whether singly or in concert, any of the following acts:

"(a) Ceasing or refusing to perform any work or to remain in any relation of employment."

This is tantamount to the temporary order requested from us. The existence of a labor dispute as well as the scope of the order requested, either as a restraining order or as injunction, was admitted by the Board's representative. *Cf. Sinclair Refining Co.* v. *Atkinson,* 370 U.S. 195 (1962); *Gilmour* v. *Wood, Wire & Metal Lathers Intern. U., Local No. 74,* 223 F.Supp. 236 (D.C. Ill. 1963).[4]

Legislation exists in the federal jurisdiction which allows coping with the problem arising from a situation similar to the one under consideration: a) insofar as the relation strictly between the parties is concerned, the Board is vested with the power to petition the appropriate court for temporary relief or restraining order, and subdivision (h) of § 9, 29 U.S.C. 160(h), expressly provides that the jurisdiction of the courts shall not be limited by the Norris-La Guardia Act,[5] and b) in the presence of an emergency which affects the national health and safety, the granting of an injunction of limited duration is provided, and meanwhile, a settlement between the parties is sought through certain mediating and conciliatory proceeding, 29 U.S.C. 176 and 178.

It is not for this Court to determine the convenience and necessity of incorporating similar provisions into our labor legislation. As long as the present legal state prevails, we

---

[4] We agreed that practically the remedy available to the employer would be to bring an action to recover damages resulting from an illegal work stoppage, *cf.* § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, but its effectiveness is doubtful in view of the fact that the local law—subdivision 13, § 249, Code of Civil Procedure, 32 L.P.R.A. § 1130—exempts from attachment and foreclosure orders all funds, possessions and properties of labor organizations when the attachment or execution orders are entered in actions arising from or as a result of or in connection with labor disputes, lockouts or strikes.

[5] This subdivision (h) was not incorporated in Puerto Rico.

cannot offer any remedy to put an end to a strike, irrespective of whether the interest and welfare of the community is affected, unless the circumstances referred to in § 5 of Act No. 50, *supra* are present. See, *El Imparcial, Inc.* v. *Brotherhood, etc.,* 82 P.R.R. 158 (1961).

The petition for temporary relief will be dismissed for lack of jurisdiction.

Mr. Justice Hernández Matos did not participate herein.